UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LAWRENCE BARRA, | Case No. 1:24-cv-00069-HBK (PC) |
| Plaintiff, | ORDER TO RANDOMLY ASSIGN A DISTRICT JUDGE |
| v. | |
| WILSON, ZIEGLER, and SCOTTI, | FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1] |
| Defendants. | (Doc. No. 13) |
| | FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's Second Amended Complaint. (Doc. No. 13, "SAC"). For the reasons set forth below, the undersigned recommends the district court dismiss the SAC because it fails to state any cognizable federal claim.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and

---
[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). The Court's review is limited to the complaint, exhibits attached, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

1  245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how
2  to cure the defects.  Such advice "would undermine district judges' role as impartial
3  decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131
4  n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad
5  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by
6  amendments previously allowed . . . ."  *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892
7  (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  On February 8, 2024, the undersigned issued an Order to Show Cause, directing Plaintiff to show cause why the Court should not dismiss his case for failure to exhaust administrative remedies.  (Doc. No. 7).  After Plaintiff filed a response, the undersigned discharged the Order to Show Cause.  (Doc. Nos. 8, 9).  The same day, Plaintiff filed a First Amended Complaint.  (Doc. No. 10).  On March 14, 2024, the undersigned screened Plaintiff's FAC and found that it failed to state any cognizable constitutional claim.  (*See* Doc. No. 12).  The Court advised Plaintiff of the pleading deficiencies and applicable law and afforded Plaintiff the opportunity to file an amended complaint.  (*Id*.).  Plaintiff timely filed a second amended complaint.  (Doc. No. 13, "SAC").

It is not clear where the events giving rise to Claim 1 of the SAC took place, but the Court infers it was in Tulare County.  The events giving rise to Claim 2 took place at Bob Wiley Detention Facility in Visalia, CA.  (*Id*. at 4).  The SAC identifies the following Tulare County Sheriff's Office staff as Defendants: (1) Wilson; (2) Ziegler; and (3) Scotti.  (*Id*. at 2-3).  The SAC alleges an Eighth Amendment excessive use of force claim and a First Amendment freedom of religion claim.  (*See generally id.*).  The following facts are presumed to be true at this stage of the screening process.

On an unspecified date, Plaintiff was scheduled to be in court but refused to go because he did not have the proper clothing.  (*Id*. at 3).  Plaintiff was escorted back to his cell and asked Defendants Wilson and Ziegler if they went through his legal papers.  (*Id*.).  They stated that they

did so while looking for his "stripers." (*Id*. at 4). Plaintiff then asked for a grievance form so that he could "get started doing my civil suite [sic] for violating my right . . ." (*Id*.). The deputies refused Plaintiff's request and he stated he wanted to talk with the mental health staff because he was "not only mainly suicidal but homacidal [sic] as well." (*Id*.). Rather than mental health personnel, Defendant Scott and his "SERT team"[2] came to Plaintiff's cell and told him to "cuff up." (*Id*.). Plaintiff refused to comply with the order, stating that he was busy "filling out a civil suite [sic] and grievance." (*Id*.). An unspecified individual then threw a "stinger grenade" which caused Plaintiff to hit his head and resulted in a severe burn on Plaintiff's upper thigh. (*Id*.).

In a seemingly unrelated incident, on an unspecified date, Plaintiff asked the chaplain at Bob Wiley Detention Center if he could obtain a satanic bible for Plaintiff and the chaplain said no, that he can only bring in books that are pre-approved by the Lieutenant/Captain. (*Id*.). Plaintiff filed a "civil suite [sic] at the deputy level and they all agree[d] with [him]." (*Id*.). Unspecified jail officials told him he should file a lawsuit for violation of his constitutional rights, which he then did. (*Id*.).

As relief for Claims 1 and 2, Plaintiff seeks $500,000 for "the mental distress and pain that [he] went through along with the punitive damages." (*Id*. at 5).

## APPLICABLE LAW AND ANALYSIS

### A. Related Claims and Joinder

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as

---

[2] The Court infers that Plaintiff is referring to the Correctional Emergency Response Team ("CERT"). *See Barrett v. GEO Grp., Inc.*, 2021 WL 5741448, at *3 (S.D. Cal. Dec. 2, 2021)

> alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff's SAC asserts two claims that are completely unrelated—one regarding alleged excessive use of force by correctional officers, and another asserting infringement on Plaintiff's freedom of religion by an unnamed jail chaplain. It is not even clear from the SAC that the two incidents occurred at the same facility (indeed Plaintiff does not name any defendant in connection with Claim 2), which by itself would be insufficient to show that they are related. The SAC does not provide dates for either incident so there is no basis to find that they are even related in time. Nor are there are any other facts to suggest a connection between these two incidents. Without more, Plaintiff's claims are improperly joined.

### B. Eighth Amendment Excessive Use of Force

The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

1  effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v.*
2  *McMillian*, 503 U.S. 1, 6-7 (1992).  When determining whether the force was excessive, the
3  Court looks to the "extent of injury suffered by an inmate . . . , the need for application of force,
4  the relationship between that need and the amount of force used, the threat 'reasonably perceived
5  by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"
6  *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical
7  force generally do not implicate the Eighth Amendment, significant injury need not be evident in
8  the context of an excessive force claim, because "[w]hen prison officials maliciously and
9  sadistically use force to cause harm, contemporary standards of decency always are violated."
10 *Hudson*, 503 U.S. at 9.

11     Here, liberally construed, the SAC asserts that on an unspecified date Plaintiff informed
12 correctional officers that he was suicidal and homicidal.  (Doc. No. 13 at 4).  In response, a
13 special team of correctional officers came to perform a cell extraction after Plaintiff refused to
14 follow their orders including a command that he submit to being placed in handcuffs.  (*Id*.).  An
15 unnamed officer then threw a "stinger grenade"[3] into Plaintiff's cell, which caused him to hit his
16 head and sustain a severe burn on his thigh.  (*Id*.).  Plaintiff does not describe any further facts
17 indicating that any officer used excessive force during the incident.

18     As an initial matter, Plaintiff's failure to specify the date of the incident violates Rule 8.
19 *See Cervantes v. Elsen*, 2023 WL 3483292 (N.D. Cal. May 15, 2023) (allegations that the
20 misconduct occurred from 2022 to 2023 was not a specific date); *Valenzuela v. Monson*, 2020
21 WL 1812043, at *2 (D. Ariz. Apr. 8, 2020); *Fisher v. Washington State Department of*
22 *Corrections*, 2019 WL 1745086, at *1 (W.D. Wash. Apr. 18, 2019) (the complaint violated Rule
23 8 of the Federal Rules of Civil Procedure because, among other reasons, it did not provide a
24 specific date and therefore it did not "provide the defendants fair notice of what the claim is . . .");
25 *Walker v. Muniz*, 2019 WL 2359229, at *4 (N.D. Cal. Jun. 4, 2019) (referencing *Bell Atlantic*

---

[3] A stinger grenade is described by its manufacturer as a non-lethal "munitions and distraction device" that are specified for use "in tactical deployment situations" including "high-risk warrant service, hostage rescue, and the arrest of potentially violent subjects." *Whaley v. Alaska, Dep't of L.*, 2023 WL 3584703, at *2 (D. Alaska May 22, 2023).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) when explaining the specific date must be alleged to meet the requirement of giving defendants fair notice); *McIntosh v. City of L.A.*, 2005 U.S. Dist. LEXIS 53641, at *5 (C.D. Cal. Jul. 21, 2005) (citing *McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996)).

Further, the Court cannot conclude from the facts alleged that the use of a stinger grenade was done "maliciously and sadistically to cause harm" rather than in a good faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6-7. Plaintiff advised correctional officers that he was both suicidal and homicidal. (Doc. No. 13 at 4). In response, a specialized team came to remove Plaintiff from his cell. (*Id.*). After refusing to come out of his cell and after refusing to submit to being handcuffed, one of the unnamed officers deployed the non-lethal device to aid in subduing Plaintiff. While correctional officers could arguably have attempted other, less intrusive means to subdue Plaintiff first, such as deploying pepper spray, the judgments of correctional officers are entitled to wide deference concerning their use of force. *Hudson*, 503 U.S. at 6; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979) (holding that "use of [tear gas] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."; *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (applying reasoning in *Spain* to find that use of pepper spray to bring a resisting prisoner into compliance does not violate Eighth Amendment). And here, there are no facts to suggest that the officers used the grenade with malicious intent or with intent to injure Plaintiff. Indeed, the SAC does not allege any other facts indicating that officers used additional force or denied Plaintiff medical treatment for his injuries, which would support a finding of malicious intent. Beyond stating that he had a "severe burn" the FAC does not state that Plaintiff suffered any lasting injury or required medical attention after the incident, which weighs against a finding of excessive force. Accordingly, the Court finds the SAC fails to allege a cognizable Eighth Amendment excessive force claim.

**C. First Amendment Free Exercise Claim**

Liberally construed, the SAC also asserts a claim under the free exercise clause of the

7

1  First Amendment based on a chaplain at the Bob Wiley Detention Center refusing to obtain a
2  satanic bible for Plaintiff.  Despite being improperly misjoined, in an abundance of caution, the
3  Court screens the claim.
4      "The right to exercise religious practices and beliefs does not terminate at the prison
5  door[,]" *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) (citing *O'Lone v. Estate of*
6  *Shabazz*, 482 U.S. 342, 348 (1987)), but a prisoner's right to free exercise of religion "is
7  necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993)
8  (citing *O'Lone*, 482 U.S. at 348).  A person asserting a free exercise claim must show that the
9  government action in question substantially burdens the person's practice of his religion.
10 *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987), aff'd sub nom. *Hernandez v. C.I.R.*, 490 U.S.
11 680, 699 (1989).  "A substantial burden . . . place[s] more than an inconvenience on religious
12 exercise; it must have a tendency to coerce individuals into acting contrary to their religious
13 beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his
14 beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y*
15 *of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and
16 alterations omitted)).
17     As an initial matter, the Court advised Plaintiff in its March 14, 2024 Screening Order that
18 in amending his complaint "Plaintiff may not amend to add unrelated claims."  (Doc. No. 12 at 6).
19 Despite that admonishment, Plaintiff has added a freedom of religion claim to his excessive force
20 claim. For reasons discussed above, that claim is misjoined and Plaintiff must pursue it in a
21 separate suit.
22     Further, Plaintiff does not name any defendant in connection with this claim, nor does he
23 specify in what way denial of a satanic bible burdens his ability to practice his Luciferian religion.
24 He merely states that because other religions are allowed to have books in the jail he should be
25 allowed to have access to a satanic bible.  Because Plaintiff has not shown "more than an
26 inconvenience" to the exercise of his Luciferian religion, he fails to state a cognizable First
27 Amendment claim.  *See Ohno*, 723 F.3d at 1011.
28     ////

**CONCLUSION AND RECOMMENDATION**

Based on the above, the undersigned finds Plaintiff's Second Amended Complaint fails to state any cognizable claim. The SAC suffers from many of the same pleading deficiencies that the undersigned identified and explained to Plaintiff in screening his First Amended Complaint. Plaintiff reasserted the same deficient Eighth Amendment excessive use of force claim that was asserted in his FAC, and added an unrelated First Amendment claim, contrary to the Court's instructions. Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the deficiencies identified above. A plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and internal quotation marks omitted). Thus, the undersigned recommends that the district court dismiss the SAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

ACCORDINGLY, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendation.

It is further **RECOMMENDED**:

The Second Amended Complaint (Doc. No. 13) be dismissed under § 1915A for failure to state a claim and this case be dismissed without further leave to amend.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's

failure to file objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: April 18, 2024

*/s/ Helena M. Barch-Kuchta*
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE